**SPENCER FANE LLP**
David E. Funkhouser III, Esq., Bar No. 022449
Jessica A. Gale, Esq., Bar No. 030583
2415 E. Camelback Road, Suite 600
Phoenix, AZ 85016-4251
Telephone: (602) 333-5451
Facsimile: (602) 333-5431
Email:   dfunkhouser@spencerfane.com
          jgale@spencerfane.com

**GOODWIN PROCTER LLP**
Scott T. Weingaertner, Esq. *(admitted pro hac vice)*
Stefan Mentzer, Esq. *(admitted pro hac vice)*
Timothy Keegan, Esq. *(admitted pro hac vice)*
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Facsimile: (212) 202-6268
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@goodwinlaw.com
Email: TKeegan@goodwinlaw.com

*Attorneys for Defendant TrackMan, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Wyoming Intellectual Property Holdings, LLC, | Case No. 2:23-cv-02518-JJT |
| Plaintiff, | **TRACKMAN'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| vs. | |
| TrackMan, Inc., | (Assigned to the Hon. John J. Tuchi) |
| Defendant. | |

1

## <u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL ALLEGATIONS ................................................................................ 1

III.    LEGAL STANDARD ........................................................................................... 5

        A.      Rule 12(b)(6) ............................................................................................. 5

        B.      Patent subject matter eligibility under 35 U.S.C. § 101 ............................. 6

                1.      *Alice* step one ................................................................................ 6

                2.      *Alice* step two ................................................................................ 7

IV.     ARGUMENT ........................................................................................................ 8

        A.      *Alice* step one:  the '671 patent is directed to an abstract idea.................... 8

        B.      *Alice* step two:  the '671 patent does not recite an inventive concept......... 11

        C.      The willful infringement claim ................................................................. 15

V.      CONCLUSION .................................................................................................... 15

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
4
 838 F.3d 1253 (Fed. Cir. 2016)......................................................................... 6

5

*Alice Corp. v. CLS Bank Int'l*,
6
 573 U.S. 208 (2014).............................................................................*passim*

7

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
 788 F.3d 1371 (Fed. Cir. 2015).................................................................. 15
8

9

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)....................................................................................... 5

10

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
11
 915 F.3d 743 (Fed. Cir. 2019)...................................................................... 6

12

*Bell Atl. Corp. v. Twombly*,
13
 550 U.S. 544 (2007)....................................................................................... 5

14

*Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*,
 955 F.3d 971 (Fed. Cir. 2020)................................................................... 11
15

16

*ChargePoint, Inc. v. SemaConnect, Inc.*,
 920 F.3d 759 (Fed. Cir. 2019)............................................................. 6, 11

17

*Cousins v. Lockyer*,
18
 568 F.3d 1063 (9th Cir. 2009) ...................................................................... 5

19

*Customedia Techs., LLC v. Dish Network Corp.*,
20
 951 F.3d 1359 (Fed. Cir. 2020)................................................................. 12

21

*Elec. Power Grp. LLC v. Alstom S.A.*,
 830 F.3d 1350 (Fed. Cir. 2016)................................................ 8, 9, 10, 11
22

23

*Enfish, LLC v. Microsoft Corp.*,
 822 F.3d 1327 (Fed. Cir. 2016)................................................................... 6

24

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
25
 879 F.3d 1299 (Fed. Cir. 2018)................................................................... 6

26

*Ghaly Devices LLC v. Humor Rainbow, Inc.*,
27
 443 F. Supp. 3d 421 (S.D.N.Y. 2020)...................................................... 12

28

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
 839 Fed. Appx. 534 (Fed. Cir. 2021) ...................................................... 12

*INO Therapeutics LLC v. Praxair Distrib. Inc.*,
     782 Fed. Appx. 1001 (Fed. Cir. 2019) ........................................................ 14

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
     850 F.3d 1332 (Fed. Cir. 2017) .................................................................... 7

*Intell. Ventures I LLC v. Symantec Corp.*,
     838 F.3d 1307 (Fed. Cir. 2016) ................................................................. 6, 7

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
     855 F.3d 1322 (Fed. Cir. 2017) .................................................................... 7

*Trinity Info Media, LLC v. Covalent, Inc.*,
     72 F.4th 1355 (Fed. Cir. 2023) ............................................................ 8, 9, 10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
     874 F.3d 1329 (Fed. Cir. 2017) ........................................................ 7, 12, 14

*Ubisoft Entm't, S.A. v. Yousician Oy*,
     814 Fed. Appx. 588 (Fed. Cir. 2020) ............................................. 9, 10, 11, 12

*Ultramercial, Inc. v. Hulu, LLC*,
     772 F.3d 709 (Fed. Cir. 2014) ..................................................................... 7

*Voter Verified, Inc. v. Election Sys. & Software LLC*,
     887 F.3d 1376 ......................................................................................... 9, 10

**Statutes**

35 U.S.C. § 101 ................................................................................. *passim*

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ........................................................................ 5, 6

U.S. Patent No. 9,384,671 ................................................................. *passim*

## I.   INTRODUCTION

The '671 patent (ECF No. 16-1) purports to claim a system covering one of the most basic of human processes:  teaching how to perform a task.  The system is said to collect information about a person's action in the real world, compare that action to an ideal action, and instruct the person on how to act like the ideal.  That is nothing more than an abstract idea, and it lacks any inventive concept to transform the idea into a patent-eligible invention.  For these reasons, the '671 patent is invalid under 35 U.S.C. § 101, and the First Amended Complaint ("FAC") should be dismissed.

Like similar patents that courts have held invalid, the '671 patent consists only of conventional, generic components.  The patent provides no teaching as to how these components are to operate—that is, how they would gather information, compare a user's actions to an ideal action, or instruct the user.  The result is a patent directed to a wide-ranging and seemingly limitless array of applications allegedly teaching people how to perform actions.  The patent speaks of systems to instruct a person on how to swing a golf club like Tiger Woods, dunk a basketball like Michael Jordan, buy a new guitar, follow a recipe, fly-fish, paint, solve math problems, and even have "more meaningful" online chats with "single females."

Ultimately, the '671 patent seeks to claim an age-old mental process of teaching—namely, comparing a person's action against an standard, ideal action, and then instructing the person how to improve.  Yet, all the '671 patent has done is take familiar concepts, apply generic computer hardware and software, and claim the result, without providing any guidance on how actually to implement the concept.  Time and again, courts have held patents like this invalid under § 101.  The Court should do the same here and dismiss the First Amended Complaint with prejudice.

## II.   FACTUAL ALLEGATIONS

Plaintiff alleges that TrackMan, Inc. ("TrackMan") infringes a single claim, claim 1, of U.S. Patent No. 9,384,671 (the "'671 patent").  FAC, ECF No. 16 ¶¶ 20-30, Ex. B; '671 patent, ECF No. 16-1.  The '671 patent claims a system consisting of components that (1)

capture and communicate information about a person's actual action in the real world; (2) compare that actual action to a "standard" or ideal action, identify differences between the actual and the ideal, and select the ideal action for the user; and (3) then instruct the person on how to change the actual action to the ideal.   Specifically, claim 1 claims a system comprising:

      a component set; and
      a **housing**, comprising:

            a **sensor** that, at least partially, captures an actual action of a user, and

            **hardware** that couples the housing to at least one of the user, equipment used by the user in performance of the actual action of the user, or a combination thereof; and

            **communication hardware** that communicates the actual action of the user to the component set,

      the **component set** comprising:

            a **comparison component** that:

            compares the actual action of the user against a first standard action to produce a first comparison result, and

            compares the actual action of the user against a second standard action to produce a second comparison result;

            a **difference component** that:

            makes an identification of a deviation between the actual action of the user and the first standard action of the user through use of the first comparison result, and

            makes an identification of a deviation between the actual action of the user and the second standard action of the user through use of the second comparison result;

            a **selection component** that selects a selected standard action for the user based, at least in part, on a smaller deviation of the deviation between the actual action of the user and the first standard action and the deviation between the actual action of the user and the second standard action;

            an **instruction component** that produces an instruction to instruct the user to change from the actual action of the user to the selected standard action for the user; and

            a **communication component** that causes disclosure of the instruction.

'671 patent, 27:20-60 (emphasis added in bold colors to identify the components of the claim).

Claim 1 consists of a "**housing**" and a "**component set**." The "**housing**" includes a "**sensor**" that captures an actual action of a user. The claim provides no detail on how the sensor is constructed, or how it operates to capture or process data. All it says is that there is a "sensor" that "captures an actual action of a user." *Id.* 27:24-25. The claim places no limit on what the "sensor" actually is, or how, as a technical matter, it functions.[1] Rather, the specification of the patent gives a wide-ranging and open-ended list of examples, stated in general terms that claim the result of what the sensor does. These include:

- a "sensor . . . placed in a right and left boxing glove . . . of two boxers" that "can obtain and/or process information related to each boxer to determine punch strength, punch form, if a combination occurs, and other determinations" (*id.* 5:31-37);

- an "application" on a cyclist's "mobile device" attached to his or her "body, clothing, the bicycle, et cetera" that "can observe physical motion of the user, biometric data of the user, performance of the bicycle, et cetera" (*id.* 13:17-23); and

- a "motion sensor . . . placed in the pocket" of a golf player which "can monitor hip movement" (*id.* 13:32-35).

The "**component set**" contains several components, including a "**comparison component**" that compares the actual action of the user against a standard action, a "**difference component**" that identifies deviations between the actual actions of the user and standard actions of the user, and a "**selection component**" that selects a selected standard action for the user. The patent does not describe how the "comparison component," "difference component," and "selection component" are constructed; rather,

---

[1] The same is true of the "**hardware**" that couples the **housing** to the user, and of the "**communications hardware**" that communicates the actual actions of the user to the **component set**. These both are generic components; the patent does not describe how they are constructed or how they implement their functions.

it defines a "component" generically, in broad terms.[2] Nor does the claim describe how these components operate to compare, differentiate, or select information. For example, the patent does not disclose how, as a technical matter, the "comparison component" would compare information about the user's action to a standard action. All the claim says is that these components work together to reach an end result—that is, to compare actions, differentiate between them, and select the ideal action for the user.

As one example, the patent's specification describes an application that can "automatically compare the golfer's golf swing against a preferred golf swing, such as the swing of a leading professional golfer." *Id.* 2:50-52. "The user can select a golf swing that the golfer would like to emulate, such as the golf swing of Tiger Woods . . . , and this golf swing of Tiger Woods becomes the standard action for the user" for purposes of comparison. *Id.* 4:26-31. Then, the "difference component . . . can compare the user's golf swing to the golf swing of Tiger Woods." *Id.* 4:31-33.

As another example, the patent's specification describes a system for identifying a new guitar for the user to purchase. The system compares the user's playing of a guitar already owned ("the actual action of the user") with the playing of the guitar that "produces a preferred (e.g., optimal)" sound ("the standard action for the user"). *Id.* 6:35-43.

---

[2] According to the '671 patent at 3:51-4:7:

> "Component" and the like as used herein, includes but is not limited to hardware, firmware, software stored or in execution on a machine, a routine, a data structure, and/or at least one combination of these (e.g., hardware and Software stored). Component, logic, module, and interface may be used interchangeably. A component may be used to perform a function(s) or an action(s), and/or to cause a function or action from another component, method, and/or system. A component may include a software controlled microprocessor, a discrete logic (e.g., ASIC), an analog circuit, a digital circuit, a programmed logic device, a memory device containing instructions, a process running on a processor, a processor, an object, an executable, a thread of execution, a program, a computer and so on. A component may include one or more gates, combinations of gates, or other circuit components. Where multiple components are described, it may be possible to incorporate the multiple components into one physical component. Similarly, where a single component is described, it may be possible to distribute that single component between multiple physical components. In at least one embodiment, the multiple physical components are distributed among a network. By way of illustration, both/either a controller and/or an application running on a controller can be one or more components.

The "**component set**" also contains an "**instruction component**" that instructs the user to change from his or her actual action to the selected standard action, and a "**communication component**" for communicating the instruction to the user.  This, in essence, is the direction to the user on how to improve his or her action to make it the standard action.  The claim does not disclose how the instruction is derived, how it is prepared, or what detail it contains; it only discloses the result—*i.e.*, that the instruction is produced and then communicated to the user.

Thus, in the golf example, "[t]he instruction component . . . produces the instruction . . . that instructs the golfer on how to change his or her swing . . . ." *Id.* 4:37-39.  "For example, the golfer may bend his or her knees less than Tiger Woods and therefore the instruction . . . can be for the golfer to bend his or her knees more, to bend his or her knees z degrees, et cetera." *Id.* 4:42-46.  In the guitar example, the instruction component can identify for the user the new guitar "that would have improved sound over the guitar already owned . . . ." *Id.* 6:43-46.  The specification does not describe how the systems arrived at these instructions; it only describes, at a high level, examples of the instructions given.

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6)

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When analyzing a complaint for failure to state a claim, a court will accept as true all well-pleaded factual allegations and construe them in the light most favorable to the nonmoving party. *See Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "[M]ere conclusory statements" or "threadbare recitals of the elements of a cause of action" are given no weight. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint should be dismissed where "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

### B.     Patent subject matter eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act sets forth the statutory classes of patent-eligible subject matter.  *See* 35 U.S.C. § 101.  The Supreme Court has identified three exceptions to patent eligibility:  laws of nature, natural phenomena, and abstract ideas.  *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  Courts determine § 101 patent eligibility through the two-step *Alice* test.  *Id.* at 217-18.  Whether an asserted patent is invalid for failure to satisfy § 101 "is a question of law based on underlying facts that may be resolved on a Rule 12(b)(6) motion when the undisputed facts require a holding of ineligibility."  *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (internal citations omitted).

#### 1.     *Alice* step one

At step one, a court determines whether the claims are directed to a patent ineligible concept—here, an abstract idea.  *Alice*, 573 U.S. at 218.  This inquiry depends on the language of the patent's claims.  *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 768-69 (Fed. Cir. 2019).  Courts "compare claims at issue to those claims already found to be directed to an abstract idea in previous cases."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).  The examination considers "the focus of the [patent's] claimed advance over the prior art to determine if the claim's character as a whole is directed to excluded subject matter."  *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (quotations omitted).

"In cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'"  *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1335-36).  A claim that could be performed by a human being, exercising generic computer-implemented steps, often is abstract.  *Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016).  Where the claims at issue are found to be directed to an abstract idea, the analysis proceeds to step two.

### 2.  *Alice* **step two**

At step two, a court determines whether the claim elements, individually or collectively, add "significantly more" to the abstract idea—an "inventive" concept—"sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 217-18.

To determine whether an inventive concept exists, courts "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* (quotations omitted). "[W]ell-understood, routine, conventional," or "purely functional" claim elements cannot "transform" an abstract idea into a patent-eligible application of the idea. *Id.* at 225-26. Claims cannot simply recite "generic functional language to achieve [the] purported solutions" without claiming "how the desired result is achieved." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017); *Symantec*, 838 F.3d at 1322 (inventive concept cannot be found in unclaimed "technological details set forth in the patent's specification").

To satisfy the requirements of § 101, computer software cannot simply organize existing information into a new form, carry out a longstanding commercial practice, or otherwise recite a long prevalent, fundamental practice now accomplished with the benefit of a computer. *See Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340-41 (Fed. Cir. 2017); *Symantec*, 838 F.3d at 1313-14. Only claims that "improve the functioning of the computer itself" or provide technological solutions to technical problems are eligible under § 101. *Alice*, 573 U.S. at 225; *see Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716-17 (Fed. Cir. 2014).

1    **IV.   ARGUMENT**

2           The '671 patent is directed to an abstract idea, and it discloses no inventive concept.[3]

3    The patent is invalid, and the First Amended Complaint should be dismissed in its entirety

4    with prejudice.

5           **A.    *Alice* step one:  the '671 patent is directed to an abstract idea**

6           The '671 patent purports to claim the basic, mental process of teaching how to

7    perform actions—specifically, by collecting information about a person's action in the real

8    world, comparing that action to an ideal action, and instructing the person on how to act

9    more like the ideal.  Courts repeatedly have held that patents like this are directed to abstract

10   ideas.

11          In *Trinity Info Media*, the Federal Circuit, in affirming a district court's order

12   dismissing a complaint under § 101, held that the claims directed to a poll-based networking

13   system were invalid because "[t]hese independent claims are focused on 'collecting

14   information, analyzing it, and displaying certain results,' which places them in the 'familiar

15   class of claims 'directed to' a patent-ineligible concept.'"  *Trinity Info Media, LLC v.

16   Covalent, Inc.*, 72 F.4th 1355, 1361-68 (Fed. Cir. 2023) (citation omitted).  Similarly, in

17   *Electric Power Group*, the Federal Circuit held that claims directed to "real-time

18   performance monitoring of an electric power grid by collecting data from multiple data

19   sources, analyzing the data, and displaying the results" were directed to an abstract idea.

20   *Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1353-54 (Fed. Cir. 2016) ("collecting

21   information, including when limited to particular content (which does not change its

22   character as information)[] [i]s within the realm of abstract ideas").  Collecting information,

23   analyzing it, and presenting results are archetypal "mental processes," and thus abstract

24   ideas:

25   _____

26   [3] Claim 1 of the '671 patent is the only claim identified in the complaint and accompanying
     claim chart.  Claim 1 is representative of the '671 patent's two other independent claims—
     claims 12 and 16.  Claim 12 is similar to claim 1 but does not require that the sensor be

27   coupled to anything and clarifies that the actions at issue are "body movement[s]."  '671
     patent, cl. 12.  Claim 16 is similar to claim 1 and merely identifies "a desirable deviation"

28   between the user's action and ideal actions and instructs the user how to mitigate" the
     deviation.  '671 patent, cl. 16.

> [W]e have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas. In a similar vein, we have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category. And we have recognized that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis.

*Id.* at 1353-54 (citations omitted). Along these lines, steps that consist of "human cognitive actions" are "nothing more than abstract ideas." *Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385-86 (citing *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011)); *see also Trinity Info Media*, 72 F.4th at 1361-62 ("A telltale sign of abstraction is when the claimed functions are mental processes that can be performed in the human mind or using a pencil and paper . . . . We have previously found analyzing information by steps people go through in their minds and collecting information, including when limited to particular content to be abstract.") (quotations omitted).

The Federal Circuit's decision in *Ubisoft* is especially instructive here, given the similarities between the patent asserted in that case and the '671 patent. In *Ubisoft*, the district court determined that the asserted patent was "directed toward the abstract idea of teaching guitar by evaluating a user's performance and generating appropriate exercises to improve that performance." *Ubisoft Entm't, S.A. v. Yousician Oy*, 814 Fed. Appx. 588, 590 (Fed. Cir. 2020) (quoting *Ubisoft Entm't, S.A. v. Yousician Oy*, 401 F. Supp. 3d 644, 648 (E.D.N.C. 2019)). The Federal Circuit affirmed. It found the patent merely claims an abstract process in five steps: (1) "presenting" fingering notations for a guitar; (2) "receiving" input; (3) "assessing" performance; (4) "determining" weaknesses; and (5) "changing" the difficultly level or "generating" mini-games. *Id.* at 591. Citing its earlier decision in *Electric Power Group*, the Federal Circuit held that the patent claims "nothing more than a processes of gathering, analyzing, and displaying certain results." *Id.*

Like the patent at issue in *Ubisoft*, the '671 patent purports to claim evaluating a user's action and generating instructions to improve it.  The '671 patent purports to claim a system that:

- Gathers information on a user's action with the "**sensor**," "**hardware**," and "**communication hardware**" components;

- Analyzes the user's action by comparing it to a standard action (the "**comparison component**"), identifying differences between the user's actions and standard actions (the "**difference component**"), and selecting a standard action for the user (the "**selection component**"); and

- Displays instructions for the user to change from the actual action to the selected standard action, employing the "**instruction component**" and "**communication component**."

This system is directed to an abstract idea, just like the videogame in *Ubisoft* that teaches a user how to play the guitar.  *See Ubisoft Entm't*, 814 Fed. Appx. at 591-92 (noting that the "mini-game generation step" of the asserted patent "is thus no different from the ordinary mental processes of a guitar instructor teaching a student how to play the guitar").  A "human cognitive action" like this—one that compares a person's actions against standard, or ideal, approaches—has been performed by the human mind for ages, and is an abstract idea.  *See Voter Verified*, 887 F.3d at 1385-86 ("[T]he claims as a whole are drawn to the concept of voting, verifying the vote, and submitting the vote for tabulation.  Humans have performed this fundamental activity that forms the basis of our democracy for hundreds of years.").

The '671 patent is even more abstract than patents previously invalidated, such as those at issue in *Trinity*, *Ubisoft*, *Electric Power*, and *Voter Verified*.  The patents at issue in those cases were confined to specific subject matter—polling information in *Trinity*, playing guitar in *Ubisoft*, electric power grid performance in *Electric Power*, and voter verification in *Voter Verified*.  The '671 patent is not limited to **any** subject matter.  In the '671 patent's own words, "[w]hile example systems, methods, and so on have been

illustrated by describing examples, and while the examples have been described in considerable detail, it is not the intention of the applicants to restrict or in any way limit the scope of the appended claims to such detail.  It is, of course, not possible to describe every conceivable combination of components or methodologies for purposes of describing the systems, methods, and so on described herein."  '671 patent, 26:47-54.  This further confirms that the '671 patent is directed to an abstract idea.  *Cf. Elec. Power*, 830 F.3d at 1353-54 ("collecting information, including when limited to particular content (which does not change its character as information)[] [i]s within the realm of abstract ideas").

**B.   *Alice* step two:  the '671 patent does not recite an inventive concept**

The '671 patent fails to recite any inventive concept that would transform the abstract idea into a patent-eligible invention.  The claims merely recite use of generic, conventional components, and they fail to provide any guidance on how to actually implement the claims.

*Alice* step two requires considering "the elements of each claim individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."  *Bozeman Fin. LLC v. Fed. Reserve Bank of Atlanta*, 955 F.3d 971, 980 (Fed. Cir. 2020) (quoting *Alice*, 573 U.S. at 218).  "Where a claim is directed to an abstract idea, the claim must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea."  *ChargePoint, Inc.*, 920 F.3d at 773 (quotations omitted).  "These additional features cannot simply be well-understood, routine, conventional activities previously known to the industry."  *Id.* (quotations omitted).  "Instead, the inventive concept must be sufficient to ensure that the patent in practice amounts to significantly more than a patent on the abstract idea."  *Id.* (quotation omitted).  "If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques—e.g., a generic computer—the claim has not been transformed into a patent-eligible application of an abstract idea."  *Ubisoft Enmn't*, 814 Fed. Appx. at 592.

The '671 patent does not recite any inventive concept.  It simply—and, for that matter, barely—describes the abstract process, using generic computer and software

components, of gathering information about a person's actual actions, comparing the person's actions against standard actions, and delivering instructions to the user.  Recitation of "generic and functional hardware is insufficient to render eligible claims directed to an abstract idea."  *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1366 (Fed. Cir. 2020).  Generic components are all the '671 patent identifies:  it recites a "**housing**," comprising a "**sensor**," "**hardware**," and "**communication hardware**"; and a "**component set**," comprising a "**comparison component**," "**difference component**," "**selection component**," "**instruction component**," and "**communication component**."  The patent defines the term "component" broadly ('671 patent, 3:51-4:7)—so broadly, in fact, that the claimed components are quintessentially non-inventive.  *See Alice Corp. Pty. Ltd.*, 573 U.S. at 226 ("The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of ***generic computer components*** configured to implement the same idea.") (emphasis added); *see also Two-Way Media*, 874 F.3d at 1339 ("merely reciting an abstract idea performed on a set of generic computer components . . . would 'not contain an inventive concept'").  The case authority confirms that "**housing**" and "**sensor**" refer only to generic computer components.  *See Ghaly Devices LLC v. Humor Rainbow, Inc.*, 443 F. Supp. 3d 421, 429 (S.D.N.Y. 2020) (invalidating patent; "limitations . . . are components of a generic computer or mobile phone such as a '***housing***'") (emphasis added); *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 Fed. Appx. 534, 538 (Fed. Cir. 2021) ("Aside from the abstract idea, the claim recites only generic computer components, including a ***sensor***, a processor, and a communication device.") (emphasis added).

The '671 patent has not arranged these generic computer components in any inventive way.  The claims structure the steps of improving at a task in the same manner as a human mental process:  gathering information, comparing and analyzing that information, and preparing and communicating instructions.  The human mind performs these same steps.  *See Ubisoft Entm't*, 814 Fed. Appx. at 592 ("the patent itself makes clear that the claimed invention involves merely the application of conventional computer technology to

1  common guitar instruction techniques"). This "common" approach "cannot transform the
2  nature of the asserted claims into patent-eligible applications of the abstract idea." *Id.*

3       Moreover, the patent structures the system to claim the ultimate result, without
4  explaining how the claimed invention actually arrived at it. The '671 patent provides no
5  guidance on ***how*** to actually gather the information beyond using a generic sensor, ***how*** to
6  compare a user's action to a standard action, ***how*** to differentiate between an actual and a
7  standard action, ***how*** to select a standard action, or ***how*** to discern what instruction to
8  provide. The patent confirms this broad approach, stating "it is not the intention of the
9  applicants to restrict or in any way limit the scope of the appended claims to such detail" in
10  examples and "[i]t is, of course, not possible to describe every conceivable combination of
11  components or methodologies for purposes of describing the systems, methods, and so on
12  described herein." '671 patent, 26:47-54. Figure 1 is illustrative of the approach, conveying
13  no explanation of how to implement these components of the system:



14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1   '671 patent, Fig. 1.  The failure to specify how actually to implement the steps is fatal to

2   patent eligibility.  *See Two-Way Media*, 874 F.3d at 1337 ("The claim requires the

3   functional results . . . but does not sufficiently describe how to achieve these results in a

4   non-abstract way.").

5        The unasserted dependent claims do not save the FAC from dismissal.  The

6   dependent claims recite only generic guidance and computer functionality, without more.

7   *See* '671 patent, cl. 2 (instruction should note that the same "equipment" should be used),

8   cl. 3 (notes an unspecified "surveillance component"), cl. 4 (unspecified "investigation

9   component" to assess "how the user follows the instruction"), cl. 5 (unspecified "prediction

10  component" "that predicts the future action of the user" which the instruction to component

11  should consider), cl. 6 (builds on claim 5 and states that the "future action is non-identical,"

12  without more, "to the selected standard action for the user"), cl. 7 (the "hardware is

13  hardware configured to couple the housing to the user"), cl. 8 (instructs the user to move

14  without equipment), cl. 9 (the hardware couples the housing to the equipment), cl. 10 (the

15  system can be used to capture a second action where the user follows the instruction), cl. 11

16  ("the housing comprises at least part of the component set").[4]

17       Finally, finding the '671 patent-eligible would raise serious and undue risk of

18  preempting a nearly infinite number of fields.  Humans in all walks of life constantly teach

19  others to perform tasks.  People instruct others how to swing golf clubs, dunk basketballs,

20  and buy new guitars.  That the '671 patent purports to turn these, and a nearly limitless

21  range of other activities, into acts of infringement confirms that the patent is invalid.  *See*

22  *INO Therapeutics LLC v. Praxair Distrib. Inc.*, 782 Fed. Appx. 1001, 1012 (Fed. Cir. 2019)

23

24

25

---

26  [4] The claims which depend from the unasserted independent claims (claims 12 and 16) are similar.  *See id.*, cl. 13 (actual and standard actions "directed to achieving a similar outcome"), cl. 14 (observing "effectiveness" of instruction to determine subsequent

27  instruction), cl. 15 (related to "sports equipment"), cl. 17 (related to "sports equipment"), cl. 18 ("hardware" "coupled" to "sports equipment" and "mobile device" used for

28  component set), cl. 19 (system applied to a second user action), cl. 20 ("desirable deviation" will be "smallest deviation").

("Preemption is sufficient to render a claim ineligible under § 101, but it is not necessary.") (quotation omitted).[5]

### C.     The willful infringement claim

Plaintiff has agreed to withdraw, with prejudice, its claim for willful infringement and any claim for enhanced damages arising from Plaintiff's allegations of willful infringement.  TrackMan has filed a Stipulation to this effect with the Court.

## V.     CONCLUSION

TrackMan respectfully requests that the Court grant the Motion and issue an order dismissing the First Amended Complaint with prejudice.

DATED this 24th day of April, 2024.

**SPENCER FANE LLP**

*s/  David E. Funkhouser III*
David E. Funkhouser III
Jessica A. Gale

**GOODWIN PROCTER LLP**

Scott T. Weingaertner, Esq. *(admitted pro hac vice)*
Stefan Mentzer, Esq.  *(admitted pro hac vice)*
Timothy Keegan, Esq. *(admitted pro hac vice)*

*Attorneys for Defendant TrackMan, Inc.*

---

[5] "While preemption may signal patent ineligible subject matter, the absence of complete preemption does not demonstrate patent eligibility. . . .  Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, as they are in this case, preemption concerns are fully addressed and made moot." *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).

15

1

**<u>CERTIFICATE OF SERVICE</u>**

2

      I hereby certify that on April 24 2024, a copy of the foregoing was filed electronically

3

using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of

4

record.

5

*<u>s/ Courtney Ryan</u>*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28