**SPENCER FANE LLP**
David E. Funkhouser III, Esq., Bar No. 022449
Jessica A. Gale, Esq., Bar No. 030583
2415 E. Camelback Road, Suite 600
Phoenix, AZ 85016-4251
Telephone: (602) 333-5451
Facsimile: (602) 333-5431
Email:   dfunkhouser@spencerfane.com
             jgale@spencerfane.com

**GOODWIN PROCTER LLP**
Scott T. Weingaertner, Esq. *(admitted pro hac vice)*
Stefan Mentzer, Esq. *(admitted pro hac vice)*
Timothy Keegan, Esq. *(admitted pro hac vice)*
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 813-8800
Facsimile: (212) 202-6268
Email: SWeingaertner@goodwinlaw.com
Email: SMentzer@goodwinlaw.com
Email: TKeegan@goodwinlaw.com

*Attorneys for Defendant TrackMan, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Wyoming Intellectual Property Holdings, LLC, | Case No. 2:23-cv-02518-JJT |
| Plaintiff, | **TRACKMAN'S REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** |
| vs. | |
| TrackMan, Inc., | |
| Defendant. | (Assigned to the Hon. John J. Tuchi) |

# <u>TABLE OF CONTENTS</u>

I.       INTRODUCTION ................................................................................................ 1

II.      COURTS ROUTINELY INVALIDATE PATENTS ON MOTIONS TO
         DISMISS, BEFORE DISCOVERY OR CLAIM CONSTRUCTION.................... 1

III.     THE '671 PATENT IS INVALID UNDER § 101 .............................................. 2

         A.      *Alice* step one:  the '671 patent is directed to an abstract idea..................... 3

                 1.       The '671 patent is directed to a human mental process .................... 3

                 2.       The '671 patent is not confined to any clear or tangible form .......... 4

         B.      *Alice* step two:  the '671 patent does not recite an inventive concept........... 6

         C.      Plaintiff's deficient claim construction argument ........................................ 7

IV.      CONCLUSION .................................................................................................. 8

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ........................................................................ 1, 2, 3, 6

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
915 F.3d 743 (Fed. Cir. 2019) ................................................................ 2

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) .............................................................. 7

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
859 F.3d 1352 (Fed. Cir. 2017) ........................................................... 2, 8

*Ghaly Devices LLC v. Humor Rainbow, Inc.*,
443 F. Supp. 3d 421 (S.D.N.Y. 2020) ...................................................... 6

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
839 Fed. Appx. 534 (Fed. Cir. 2021) ...................................................... 6

*Simio, LLC v. Flexsim Software Prods.*,
983 F.3d 1353 (Fed. Cir. 2020) .............................................................. 2

*Trinity Info Media, LLC v. Covalent, Inc.*,
72 F.4th 1355 (Fed. Cir. 2023) ........................................................... 2, 3, 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
874 F.3d 1329 (Fed. Cir. 2017) .............................................................. 6

*Ubisoft Entm't, S.A. v. Yousician Oy*,
814 Fed. Appx. 588 (Fed. Cir. 2020) .................................................... 3, 4

**Other Authorities**

Rule 12(b)(6) ........................................................................................... 1, 2

ii

## I.    INTRODUCTION

Plaintiff's opposition does not show that the '671 patent is directed to patent-eligible subject matter.  Rather, the '671 patent purports to be directed to an abstract idea:  the age-old mental process of teaching by comparing a person's action against a standard, ideal action, and then instructing the person how to improve.  The '671 patent also lacks any inventive concept.  It simply takes familiar concepts, applies generic computer hardware and software, and claims the result, without providing guidance on how actually to implement the concept.  Courts repeatedly have held patents like this invalid under § 101.

The opposition does not meaningfully contest this.  Plaintiff ignores the cases TrackMan cites in its motion where, on similar facts, courts have invalidated patents under § 101.  Plaintiff instead offers platitudes and conclusory statements untethered to the language of the '671 patent's claims.  For example, when discussing step two of the *Alice* test, Plaintiff asserts that the claims use a "specific claimed architecture."  Plaintiff posits that the "architecture" consists of a "sensor," "hardware," and a "component set."  Each is quintessentially generic.  And, the architecture is not "specific."  The patent expressly does not limit what a "sensor" and "component set" may be—claiming the broadest possible meaning of the terms.

Plaintiff's argument that claim construction is required before resolving TrackMan's motion fails as a matter of law.  Plaintiff does not propose any specific construction or explain how claim construction would alter the outcome.  And TrackMan's motion is based on the claim language as written in the '671 patent, without any construction.

The First Amended Complaint ("FAC") should be dismissed with prejudice.

## II.    COURTS ROUTINELY INVALIDATE PATENTS ON MOTIONS TO DISMISS, BEFORE DISCOVERY OR CLAIM CONSTRUCTION

Plaintiff misstates the law when it suggests that the Court cannot decide patent eligibility on a motion to dismiss.  ECF No. 32 at 1-2.  Whether an asserted patent is invalid for failure to satisfy § 101 "is a question of law based on underlying facts that may be resolved on a Rule 12(b)(6) motion when the undisputed facts require a holding of

ineligibility." *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 749 (Fed. Cir. 2019) (internal citations omitted).  The Court need not accept as true a plaintiff's pleading of the legal conclusion that an asserted patent is valid.  *See, e.g.*, *Simio, LLC v. Flexsim Software Prods.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."); *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1367 (Fed. Cir. 2023) (same).  The Federal Circuit repeatedly has "affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases); *accord Trinity Info Media*, 72 F.4th at 1360-61.

Plaintiff also misstates the law when it argues that "the Federal Circuit has recognized that resolution of section 101 motions is inappropriate until after claim construction." ECF No. 32 at 1.  This is not the law.  For claim construction to prevent a court from deciding patent eligibility at the pleadings stage, the patent owner must "propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes." *Trinity Info Media*, 72 F.4th at 1360-61 ("A patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101.").  Where, as here, a patent owner "did not identify a proposed claim construction or specific facts to be discovered," patent validity may be resolved on a motion to dismiss. *See id.* at 1361.

The same is true when a patent owner attempts to stave off dismissal by asserting that discovery is needed. *See id.* at 1360.  Claiming "a generic need for . . . discovery" is insufficient; specific facts must be identified. *See id.* at 1360-61.

### III.   THE '671 PATENT IS INVALID UNDER § 101

The opposition does nothing to show that the '671 patent passes both steps of the *Alice* test for patent eligibility.  The patent is directed to an abstract idea, and it adds no inventive concept.  Plaintiff's conclusory arguments do not demonstrate otherwise.

2

**A.**   ***Alice* step one:  the '671 patent is directed to an abstract idea**

The '671 patent is directed to the abstract idea of teaching how to perform an action, by collecting information about a person's action in the real world, comparing that action to an ideal action, and instructing the person on how to act more like the ideal.  As TrackMan explains in its motion, the claim concerns a human mental process similar to those at issue in *Trinity Info Media*, *Ubisoft*, *Electric Power*, and *Voter Verified*.  But unlike even those patents—all of which were found to be directed to abstract human mental processes—the '671 patent is not limited to any specific environment.  The '671 patent purports to claim teaching *anything to anyone*—raising serious preemption concerns in addition to § 101 issues.

Plaintiff does not address any of the cases TrackMan cites.  Plaintiff merely offers two conclusory arguments in response, neither of which is persuasive: (1) that "[t]he functions performed by the claimed system are not mental processes" (ECF No. 32 at 6 (quotation omitted)); and (2) the claims are not directed to an abstract idea because "[t]hey have physical, tangible and specialized components" and thus "a clear, concrete, and tangible form" (*id.* at 8).

**1.**   **The '671 patent is directed to a human mental process**

Plaintiff argues that the patent does not claim a human mental process.  *See id.* at 5-6.  In Plaintiff's own words, "[t]he focus of the claimed advance . . . is a system that allows for a comparison of an action of a user, such as a golf swing, against a preferred action and that generates instructions to the user based on the comparison."  *Id.* at 5.  But the Federal Circuit has held such an analysis-comparison-instruction system to be a quintessential mental process.  *See Ubisoft Entm't, S.A. v. Yousician Oy*, 814 Fed. Appx. 588, 590 (Fed. Cir. 2020) (holding patent invalid because it claims "nothing more than a processes of gathering, analyzing, and displaying certain results").  In *Ubisoft*, the Federal Circuit held that the asserted patent was "directed toward the abstract idea of teaching guitar by evaluating a user's performance and generating appropriate exercises [i.e., instruction] to improve that performance."  *Id.* at 590 (quoting *Ubisoft Entm't, S.A. v. Yousician Oy*, 401

3

F. Supp. 3d 644, 648 (E.D.N.C. 2019)).  The Federal Circuit found the patent claimed an abstract process in five steps, similar to the steps presented by the '671 patent:  (1) "presenting" fingering notations for a guitar; (2) "receiving" input; (3) "assessing" performance; (4) "determining" weaknesses; and (5) "changing" the difficultly level or "generating" mini-games.  *Id.* at 591.  Citing its earlier decision in *Electric Power Group*, the Federal Circuit held that the patent claims "nothing more than a processes of gathering, analyzing, and displaying certain results."  *Id.*

The invalid *Ubisoft* patent was significantly *less* abstract than the '671 patent.  The Ubisoft patent was confined to assessing and instructing how a guitar is played.  *See id.* at 590.  The '671 patent is much less focused, purporting to cover analysis, comparison, instruction of any action—from swinging a golf club like Tiger Woods, dunking a basketball like Michael Jordan, buying a new guitar, following a recipe, fly-fishing, painting, solving math problems, and even having "more meaningful" online chats with "single females."  ECF No. 29 at 1, 4-5.

The example Plaintiff provides in making its argument confirms that the '671 patent is, in fact, directed to a human mental process.  Plaintiff writes that the patent purports to cover "[c]arefully tracking a golfer's movement, applying statistical analysis to the inputs and outputs at different stages of motion on different portions of the body, and determining the changes that can be implemented."  ECF No. 32 at 6.  This is the exact type of process that can be, and is often, done in the human mind and with paper and pencil.  There are industries dedicated to assessing, or tracking, a golfer's movement, analyzing the movement (statistically or otherwise), and determining what changes can be implemented.  It takes no professional to understand that this is the precise statement of work for a golf caddie, and within the purview of the job descriptions for a golf coach or golf announcer.

## 2.    The '671 patent is not confined to any clear or tangible form

Plaintiff argues that "an idea is abstract if it has 'no particular concrete or tangible form,'" attempting to distinguish the claims from an abstract idea.  ECF No. 32 at 6 (citing *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)).  But that is precisely

how to describe the claims of the '671 patent.  The claims are directed to teaching how to perform a task—any task.  They do not have a "clear, concrete, and tangible" form.  Rather, the patent literally disavows any specific form or components.  In the '671 patent's own words:

> While example systems, methods, and so on have been illustrated by describing examples, and while the examples have been described in considerable detail, ***it is not the intention of the applicants to restrict or in any way limit the scope of the appended claims to such detail***.  ***It is, of course, not possible to describe every conceivable combination of components or methodologies*** for purposes of describing the systems, methods, and so on described herein.

'671 patent, 26:47-54 (emphasis added).  The patent purports to claim a system to instruct any person at any task.

The '671 patent's approach to defining the "sensor" is illustrative of the infinite forms the patent purports to take.  No detail is provided on how the "sensor" is constructed, or how it operates to capture or process data.  All the patent says is that there is a "sensor" that "captures an actual action of a user."  '671 patent, 27:24-25.  And no limit exists on what the "sensor" could be, as is evident from the many and varied items the patent claims could be used as a "sensor":  scoring systems (*id.* at 5:30-65), audio processing (*id.* at 6:49-54), image or video processing (*id.* at 6:55-67, 10-65-11:6), a mobile device motion sensor (*id.* at 13:13-36), markers of "various shapes, sizes, and colors," machine vision and machine learning (*id.* at 14:29-44), "pedometer, GPS, gyroscope, accelerometer" (*id.* at 14:54-58), computer vision, AI (*id.* at 19:21-25), "analysis algorithm" (*id.* at 22:55-67), "Bayesian model, Markov model, statistical projection, neural networks, classifiers (e.g., linear, non-linear, etcetera), using provers to analyze logical relationships, rule-based systems, deep intelligence, or other technique" (*id.* at 26:39-46).

In sum, the '671 patent is directed to the abstract idea of teaching how to perform a task through observation, comparison, and instruction.   The opposition does not

1    demonstrate otherwise.  The '671 patent thus fails step one of the *Alice* test.[1]

2            **B.    *Alice* step two:  the '671 patent does not recite an inventive concept**

3            The only *Alice* step two argument Plaintiff makes is that the '671 patent's "specific

4    claimed architecture" provides an inventive concept.  *See* ECF No. 32 at 8.  Plaintiff argues

5    that this "architecture" consists of a "sensor," "hardware," and a "component set."  The

6    argument serves as an extension of Plaintiff's argument presented (incorrectly) for *Alice*

7    step one that the patent is saved because of its invocation of "specialized" components.  *See*

8    *id.*

9            The alleged "specialized" components—a "sensor," "hardware," and a "component

10   set"—are nothing of the sort.  The are quintessentially generic components.  *See Alice Corp.*

11   *v. CLS Bank Int'l*, 573 U.S. 208, 226 (2014) ("The method claims recite the abstract idea

12   implemented on a generic computer; the system claims recite a handful of ***generic computer***

13   ***components*** configured to implement the same idea.") (emphasis added); *see also Two-*

14   *Way Media*, 874 F.3d at 1339 ("merely reciting an abstract idea performed on a set of

15   generic computer components . . . would 'not contain an inventive concept'"); *iLife Techs.,*

16   *Inc. v. Nintendo of Am., Inc.*, 839 Fed. Appx. 534, 538 (Fed. Cir. 2021) ("Aside from the

17   abstract idea, the claim recites only generic computer components, including ***a sensor***, a

18   processor, and a communication device.") (emphasis added); *Ghaly Devices LLC v. Humor*

19   *Rainbow, Inc.*, 443 F. Supp. 3d 421, 429 (S.D.N.Y. 2020) (invalidating patent; "limitations

20   . . . are components of a generic computer or mobile phone such as a '***housing***'") (emphasis

21   added).

22           Far from claiming a "specific" architecture, the '671 patent disavows any.  As noted

23

---

24   [1] Plaintiff argues that the patent has a clear and tangible form because the claims invoke
     "specialized components."  ECF No. 32 at 8.  That argument has no bearing on whether the
25   claims are directed to an abstract idea at step one of the *Alice* test.  An argument about
     "specialized," as opposed to generic, components is an argument relevant to step two of the
26   *Alice* test, which considers whether claims go beyond an abstract idea to recite an inventive
     concept.  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339
27   (Fed. Cir. 2017) (step two analysis requires considering whether claims simply recite
     "generic functional language to achieve [the] purported solutions" without claiming "how
28   the desired result is achieved").  Accordingly, TrackMan addresses this argument in its
     discussion of step two.

                                          6

1    above, the patent states that "it is not the intention of the applicants to restrict or in any way

2    limit the scope of the appended claims to such detail" and that "[i]t is . . . not possible to

3    describe every conceivable combination of components or methodologies for purposes of

4    describing the systems, methods, and so on described herein." '671 patent, 26:47-54.  The

5    limitless description of "sensor" described above confirms the same.  As does the open-

6    ended and unlimited definition that the patent provides for a "component."  According to

7    the patent, a "component" "includes but is not limited to" the following generic terms:

8    "hardware, firmware, software stored or in execution on a machine, a routine, a data

9    structure, and/or at least one combination of these (e.g., hardware and Software stored)."

10   '671 patent at 3:51-54.  The patent goes on to state what a "component may include":  "a

11   software controlled microprocessor, a discrete logic (e.g., ASIC), an analog circuit, a digital

12   circuit, a programmed logic device, a memory device containing instructions, a process

13   running on a processor, a processor, an object, an executable, a thread of execution, a

14   program, a computer and so on" and "may include one or more gates, combinations of gates,

15   or other circuit components."  *Id.* at 3:56-66.

16        The claims at issue in *Cellspin*, which were saved at step two and which Plaintiff

17   attempts to analogize the claims of the '671 patent to (ECF No. 32 at 3), highlight how

18   deficient the claims of the '671 patent are.  The claims in *Cellspin* provided details on how

19   a specific "two-step, two device structure" provided advantages over prior art combinations

20   of elements.  *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318-19 (Fed. Cir. 2019).

21   The '671 patent, by contrast, is not limited to any specific devices.  *See supra* Part III.A.2.

22   And the '671 patent contains no detail—and Plaintiff does not argue any—regarding any

23   alleged advantages over prior art.

24        The '671 patent recites only generic computer components, and it does not add an

25   inventive concept.  The patent fails step two, and thus is patent-ineligible.

26        **C.    Plaintiff's deficient claim construction argument**

27        Plaintiff's argument that claim construction is required before TrackMan's motion

28   can be decided is wrong as a matter of law, and it makes no sense.

7

1    Claim construction is not a prerequisite to holding a patent ineligible under § 101 on

2    a motion to dismiss.  *See Trinity Info Media*, 72 F.4th at 1360-61 (Federal Circuit explaining

3    that it "repeatedly" has "affirmed § 101 rejections at the motion to dismiss stage, before

4    claim construction or significant discovery has commenced"); *Cleveland Clinic Found.*,

5    859 F.3d at 1360 ("we have repeatedly affirmed § 101 rejections at the motion to dismiss

6    stage, before claim construction or significant discovery has commenced") (collecting

7    cases).  "A patentee must do more than invoke a generic need for claim construction or

8    discovery to avoid grant of a motion to dismiss under § 101." *Trinity Info Media*, 72 F.4th

9    at 1360.  "Instead, the patentee must propose a specific claim construction or identify

10   specific facts that need development and explain why those circumstances must be resolved

11   before the scope of the claims can be understood for § 101 purposes." *Id.* at 1360-61.

12   Plaintiff has not done so.  Plaintiff has "not identif[ied] a proposed claim

13   construction or specific facts to be discovered." *See id.* at 1361.  All Plaintiff has done is

14   state, without more, that claim construction of certain phrases would be "directly relevant."

15   ECF No. 32 at 9.  Plaintiff has failed to propose any constructions for these terms or explain

16   why a construction is necessary before deciding patent eligibility.  Nor has Plaintiff

17   identified any facts to be discovered or explain why either claim construction or discovery

18   "must be resolved before the scope of the claims can be understood for § 101 purposes."

19   *Trinity Info Media, LLC*, 72 F.4th at 1361.  As a result, Plaintiff's claim construction

20   argument fails, and it cannot be used to stave off dismissal.  *See id.*

21   **IV.   CONCLUSION**

22   TrackMan respectfully requests that the Court grant its motion to dismiss and issue

23   an order dismissing the First Amended Complaint with prejudice.

24

25

26

27

28

DATED this 15th day of May, 2024.

**SPENCER FANE LLP**

*s/ David E. Funkhouser III*
David E. Funkhouser III
Jessica A. Gale

**GOODWIN PROCTER LLP**

Scott T. Weingaertner *(admitted pro hac vice)*
Stefan Mentzer *(admitted pro hac vice)*
Timothy Keegan *(admitted pro hac vice)*

*Attorneys for Defendant TrackMan, Inc.*

1

**<u>CERTIFICATE OF SERVICE</u>**

2          I hereby certify that on May 15 2024, a copy of the foregoing was filed electronically

3   using the Clerk of Court's CM/ECF system, which will provide notice to all counsel of

4   record.

5                                    *<u>s/ Courtney Ryan</u>*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28