**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wyoming Intellectual Property Holdings LLC, <br><br> Plaintiff, <br><br> v. <br><br> Trackman Incorporated, <br><br> Defendant. | No. CV-23-02518-PHX-JJT <br><br> **ORDER** |

At issue is Defendant Trackman Incorporated's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 29, Mot.), to which Plaintiff Wyoming Intellectual Property Holdings LLC filed a Response (Doc. 32, Resp.) and Defendant filed a Reply (Doc. 33, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion to Dismiss.

**I.     BACKGROUND**

The United States Patent and Trademark Office ("USPTO") issued U.S. Patent No. 9,384,671 ("the '671 Patent") on July 5, 2016. (Doc. 16, Am. Compl. Ex. A, '671 Patent at 2.) The '671 Patent, titled "Instruction Production," has a priority date of February 17, 2013, and "teaches systems and methods for identifying a difference between an actual action of a user and a standard action for the user, and for producing an instruction to instruct the user to change from the action of the user to the standard action of the user."

(Am. Compl. ¶¶ 8, 12, 14.) After the '671 Patent was issued, Plaintiff was assigned sole and exclusive ownership. (Am. Compl. ¶ 9.)

On December 6, 2023, Plaintiff filed the present suit against Defendant under 35 U.S.C. § 271 (Doc. 1, Compl.), and in the Amended Complaint, Plaintiff alleges that Defendant "has infringed . . . one or more claims, including at least Claim 1, of the '671 Patent." (Am. Compl. ¶ 24.) The '671 Patent includes two other independent claims, but Claim 1 is representative of the others:[1]

> What is claimed is:
> 1. A system, comprising:
>    a component set; and
>    a housing, comprising:
>       a sensor that, at least partially, captures an actual action of a user, and
>       hardware that couples the housing to at least one of the user, equipment used by the user in performance of the actual action of the user, or a combination thereof; and
>    communication hardware that communicates the actual action of the user to the component set,
>    the component set comprising:
>       a comparison component that:
>          compares the actual action of the user against a first standard action to produce a first comparison result, and
>          compares the actual action of the user against a second standard action to produce a second comparison result;
>       a difference component that:
>          makes an identification of a deviation between the actual action of the user and the first standard action of the user through use of the first comparison result, and
>          makes an identification of a deviation between the actual action of the user and the second standard action of the user through the use of the second comparison result;
>       a selection component that selects a selected standard action for the user based, at least in part, on a smaller deviation of the deviation between the actual action of the user and the first standard action

---

[1] Claim 12 differs from Claim 1 by specifying that the measured action is a "body movement" and does not require the sensor to be coupled to anything. (*See* '671 Patent col. 28:35–65.) Claim 16 differs from Claim 1 by identifying "a desirable deviation" between a user's actual action and the standard action, then instructing the user to mitigate the deviation. (*See* '671 Patent col. 29:15–30:17.)

     and the deviation between the actual action of the user and the second standard action;
  an instruction component that produces an instruction to instruct the user to change from the actual action of the user to the selected standard action for the user; and
  a communication component that causes disclosure of the instruction.

('671 Patent col. 27:20–60.)

  In other words, the '671 Patent claims a system comprising a "sensor" that captures data about a user's actual action, a "comparison component" that compares the actual and standard (*i.e.*, ideal) actions, a "difference component" that identifies the deviation between the actual and standard actions, a "selection component" that selects a standard action to minimize this deviation, an "instruction component" that produces an instruction for the selected standard action, and a "communication component" that discloses this instruction to the user. As of the priority date, Plaintiff alleges that this claimed system and its individual components were "novel, non-obvious, unconventional, and non-routine." (Am. Compl. ¶ 12.)

  Plaintiff asserts that Defendant's "products including, but not limited to, the Trackman 4 system, that provides data related to every aspect of club and ball, that analyzes trajectory, shots, swings, and that emphasizes and/or instructs on potential areas of improvement . . . infringe at least Claim 1 of the '671 Patent." (Am. Compl. ¶ 24.) Thus, Plaintiff asks this Court to enjoin Defendant from further infringement of the '671 Patent—or alternatively, award Plaintiff future royalties—as well as award monetary damages under 35 U.S.C. § 284. (Am. Compl. at 8.)

  In its Motion to Dismiss, Defendant contends that the '671 Patent is invalid under 35 U.S.C. § 101, asserting that it recites "nothing more than an abstract idea, and it lacks any inventive concept to transform the idea into a patent-eligible invention." (Mot. at 1.)

## II. LEGAL STANDARD

### A. Motion to Dismiss

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to

state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B. Patent Eligibility

Patent eligibility is a question of law that may also contain underlying questions of fact. *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). As such, patent eligibility can be determined as a matter of law on a motion to dismiss only when there is no issue of material fact regarding the claim elements or claimed combination. *Id.* Put another way, determination of patent eligibility at the pleading stage is appropriate

"only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

Patents granted by the USPTO are presumed to be valid. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011). This presumption acknowledges that experts in the technical field have "already examined whether the patent satisfies the 'prerequisites for issuance of a patent,' including § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (quoting *Microsoft*, 564 U.S. at 95–96). However, "[a] party asserting an invalidity defense may overcome this presumption with 'clear and convincing evidence' proving otherwise." *Datanet LLC v. Microsoft Corp.*, 2023 WL 3947829, at *2 (W.D. Wash. June 12, 2023) (quoting *Microsoft*, 564 U.S. at 97); *see also Cisco Sys., Inc. v. Uniloc USA, Inc.*, 386 F. Supp. 3d 1185, 1190 (N.D. Cal. 2019).

### III. ANALYSIS

In its Motion to Dismiss, Defendant argues that the '671 Patent is invalid under 35 U.S.C. § 101 because it recites "nothing more than an abstract idea, and it lacks any inventive concept to transform the idea into a patent-eligible invention." (Mot. at 1.) Under § 101, a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. The Supreme Court has interpreted § 101 broadly, citing congressional intent for patentable subject matter to "include anything under the sun that is made by man." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980). However, the Supreme Court has also held that laws of nature, natural phenomena, and abstract ideas are not themselves patentable because providing patent protection would "impede innovation" by excluding others from "the basic tools of scientific and technological work." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

Even when claims are found to be directed to a law of nature, natural phenomenon, or abstract idea, patent protection may still be obtained if the claims "integrate the building blocks into something more." *Id.* Therefore, determining whether a patent that allegedly

claims an abstract idea is invalid according to § 101 is a two-step process. *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). At step one, the Court must determine whether the patent claims at issue are directed to an abstract idea. *Id.* If they are not, the subject matter is deemed patent eligible and the § 101 inquiry ends. *Id.* If they are, the Court must proceed to step two and "consider the elements of each claim—both individually and as an ordered combination—to determine whether the additional elements transform the nature of the claim into a patent-eligible application of that abstract idea." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014).

### A. Step One: Abstractness

At step one of the § 101 inquiry, the Court must determine whether the '671 Patent is directed to an abstract idea. "The Supreme Court has not established a definitive rule to determine what constitutes an 'abstract idea.'" *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336 (Fed. Cir. 2016). Part of the challenge with doing so is that "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). As a result, it is possible at some level to characterize all claims as being directed to an abstract idea, and overgeneralizing claims may lead to a situation where "the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337.

Despite the difficulty courts have faced in defining what is directed to an abstract idea for purposes of § 101, "several guiding principles emerge from Supreme Court and Federal Circuit precedent." *GoDaddy.com LLC v. RPost Commc'ns Ltd.*, No. CV-14-00126-PHX-JAT, 2016 WL 3165536, at *6 (D. Ariz. June 7, 2016). One approach courts have taken is to compare the "claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1336.

Courts have repeatedly found that claims focused on "collecting information, analyzing it, and displaying certain results" are directed to an abstract idea. *E.g.*, *Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1362 (Fed. Cir. 2023); *Ubisoft Entm't,*

- 6 -

*S.A. v. Yousician Oy*, 814 F. App'x 588, 591 (Fed. Cir. 2020) ("'[C]laims are 'directed to an abstract idea' when they recite 'a process of gathering and analyzing information of a specified content, then displaying the results, [without] any particular assertedly inventive technology for performing those functions.'" (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353–54 (Fed. Cir. 2016) (alteration in original))); *see also Voter Verified, Inc. v. Election Sys. & Software LLC*, 887 F.3d 1376, 1385 (Fed. Cir. 2018) (noting that steps characterized as "human cognitive actions" are "nothing more than abstract ideas" (citation omitted)).

In *Ubisoft*, the Federal Circuit encountered a strikingly similar claim as that asserted here. The patent claim in *Ubisoft* concerned an "interactive game designed for learning to play guitar." *Ubisoft*, 814 F. App'x at 589. The district court initially determined that the asserted patent was "directed toward the abstract idea of teaching guitar by evaluating a user's performance and generating appropriate exercises to improve that performance." *Id.* at 590. On appeal, the Federal Circuit agreed, finding that the patent was directed to patent-ineligible subject matter by "merely claim[ing] an abstract process in five steps: (i) 'presenting' notations; (ii) 'receiving' input; (iii) 'assessing' performance; (iv) 'determining' weaknesses; and (v) 'changing' the difficulty level or 'generating' mini-games." *Id.* at 591.

Much like the patent at issue in *Ubisoft*, the '671 Patent is directed toward the abstract idea of teaching a user how to do something by evaluating the user's performance and generating instructions to improve that performance. The '671 Patent claims a process of "collecting information, analyzing it, and displaying certain results"—a process squarely in the realm of abstract ideas. Indeed, each step of this teaching process is a quintessential "human cognitive action" that "[h]umans have performed . . . for hundreds of years." *See Voter Verified*, 887 F.3d at 1385. And the claims in the '671 Patent are not directed to a problem unique to webpages and the Internet, *see DDR Holdings*, 773 F.3d at 1257, nor do they present a specific improvement to computer functionality, *see Enfish*, 822 F.3d at

1335. Rather, the '671 Patent appears to claim "a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *See id.* at 1303.

Further, as Defendant notes, the subject matter of the '671 Patent appears even more abstract than the ineligible patents in similar cases like *Ubisoft* or *Voter Verified*. (*See* Mot. at 10–11.) In those cases, the claims concerned specific subject matter, such as guitar playing in *Ubisoft*, or voter verification in *Voter Verified*. But the '671 Patent is not similarly limited to any specific subject matter, proposing numerous potential applications while expressly precluding any limiting construction:

> While example systems, methods, and so on have been illustrated by describing examples, and while the examples have been described in considerable detail, it is not the intention of the applicants to restrict or in any way limit the scope of the appended claims to such detail. It is, of course, not possible to describe every conceivable combination of components or methodologies for purposes of describing the systems, methods, and so on described herein. Therefore, innovative aspects are not limited to the specific details, the representative apparatus, and illustrative examples shown and described. Thus, this application is intended to embrace alterations, modifications, and variations that fall within the scope of the appended claims.

('671 Patent col. 26:47–59.) That the '671 Patent claims are directed to an even *more* general concept than abstract ideas found in previous cases suggests, at minimum, that the '671 Patent claims are also directed to an abstract idea.

**B. Step Two: Inventiveness**

When a claim is directed to an abstract idea, a court must proceed to step two of the § 101 inquiry and "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. at 221 (quoting *Mayo*, 556 U.S. at 82). In answering this question, courts should "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the [abstract] nature of the claim.'" *Id.* at 218 (quoting *Mayo*, 556 U.S. at 79). "[T]o ensure that the claim is more than a drafting effort to monopolize the abstract idea," these

additional elements "cannot simply be well-understood, routine, conventional activities previously known to the industry." *Chargepoint Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019).

Even if a claim directed to an abstract idea is implemented with generic computer and network components, the claim may still be patent-eligible if it "entails an unconventional technological solution . . . to a technological problem," such that "these generic components operate in an unconventional manner to achieve an improvement in computer functionality." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300–01 (Fed. Cir. 2016). But "[i]f a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques—*e.g.*, a generic computer—the claim has not been transformed into a patent eligible-application of an abstract idea." *Ubisoft Entm't*, 814 F. App'x at 592; *see iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 538 (Fed. Cir. 2021) (invalidating a claim that "recite[d] only generic computer components, including a sensor, a processor, and a communication device").

As previously noted, the '671 Patent claims are directed to an abstract idea, and the individual claim components are recited as nothing more than generic computer components. For example, references in the '671 Patent to a "sensor" can include a seemingly limitless array of data-collecting components, including a microphone ('671 Patent col. 6:50), motion sensor (*id.* col. 13:32), or camera (*id.* col. 14:60). The same can be said of other generic references in the '671 Patent to components like "housing," "hardware," and "component," all of which are defined simply by their generic functions. *See Beteiro, LLC v. DraftKings Inc.*, 104 F.4th 1350, 1358 (Fed. Cir. 2024) ("Where, as here, the specification 'describes the components and features listed in the claims generically,' it 'support[s] the conclusion that these components and features are conventional.'" (citation omitted)).

Fatally, the '671 Patent does not utilize these generic components in an unconventional manner to improve computer functionality. Indeed, Defendant correctly

notes that the '671 Patent does not seem to offer any explanation on how the components operate to achieve the desired result (Mot. at 13–14), let alone how these components operate in an unconventional manner to improve computer functionality. *See Two-Way Media v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("The claim requires the functional results . . . but does not sufficiently describe how to achieve these results in a non-abstract way."). The '671 Patent is thus directed at the abstract idea of training a person to better perform a task, and it has not arranged these generic computer components in an inventive manner creating a patent-eligible application of this abstract idea. *See Ubisoft*, 814 F. App'x at 592 ("[T]he patent itself makes clear that the claimed invention involves merely the application of conventional computer technology to common guitar instruction techniques.").

       Lastly, Defendant argues that finding the '671 Patent valid "would raise serious and undue risk of preempting a nearly infinite number of fields." (Mot. at 14–15.) "Preemption is sufficient to render a claim ineligible under § 101, but it is not necessary." *INO Therapeutics LLC v. Praxair Distrib. Inc.*, 782 F. App'x 1001, 1012 (Fed. Cir. 2019). Claims have previously avoided preemption by including specific, unique technological specifications that distinguish the claim from the prior (and possible future) art. *See, e.g.*, *Cellspin Soft*, 927 F.3d at 1318 (claiming an unconventional "two-step, two-device structure requiring a connection *before* data is transmitted"); *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) (avoiding preemption by claiming a "specific structure" that left room for alternative "rules-based means of automating lip synchronization" like motion capture animation); *BASCOM Global Internet Servs. Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (reciting "a specific, discrete implementation of the abstract idea of filtering content" that did not preempt other uses of that idea).

       Here, the Court can find no unique specifications in the '671 Patent claims that avoid preempting the entire realm of computer-assisted teaching and transform this abstract idea into a patent-eligible application. Rather, the '671 Patent claims merely apply

- 10 -

"conventional computer technology" to implement this abstract idea, which cannot transform it into a patent-eligible application.

### C. Claim Construction

In opposition to Defendant's Motion to Dismiss, Plaintiff asserts in the alternative that specific terms and phrases in the '671 Patent require construction before the Court can rule on Defendant's Motion. Specifically, the phrases purportedly requiring construction are: (1) "hardware that couples the housing to at least one of the user, equipment used by the user in performance of the actual action of the user, or a combination thereof"; (2) "comparison component"; (3) "difference component"; (4) "selection component"; and (5) "instruction component." (Resp. at 8–9.)

"[Courts] have repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017). Thus, simply identifying the terms to be construed does not prevent this Court from determining the eligibility of the '671 Patent:

> A patentee must do more than invoke a generic need for claim construction or discovery to avoid grant of a motion to dismiss under § 101. Instead, the patentee must propose a specific claim construction or identify specific facts that need development and explain why those circumstances must be resolved before the scope of the claims can be understood for § 101 purposes.

*Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360–61 (Fed. Cir. 2023) (citation omitted).

Here, Plaintiff has not proposed any specific construction of the asserted terms, but rather notes that "the Court is left with *zero developed record* from which it could possibly assess what was, and what was not, well-understood, routine, and conventional in the art as of February 2013, not to mention a lack of familiarity with the disclosure and the prosecution history of the Asserted Patent." (Resp. at 9.) Although this argument might hint at the specific facts to be developed, Plaintiff has failed to explain why the Court's familiarity with the art as of February 2013 and the history of the '671 Patent "must be

resolved before the scope of the claims can be understood for § 101 purposes." *See Trinity Info*, 72 F.4th at 1361; *see also Ubisoft*, 814 F. App'x at 592 (noting that courts "are not required to accept [a plaintiff's] unreasoned conclusions and arguments in the absence of specific plausible allegations of supporting facts").[2]

Regardless of any proposed construction, the broad language in the '671 Patent hamstrings Plaintiff's argument. The Court needs no further record on the state of the art in February 2013 or the history of the '671 Patent because the plain language of the Patent is so overexpansive as to encompass nearly *any* version of the art that existed when the Patent was issued. For example, the Patent's definition for *component*

> includes but is not limited to hardware, firmware, software stored or in execution on a machine, a routine, a data structure, and/or at least one combination of these (e.g., hardware and software stored). . . . A component may include a software controlled microprocessor, a discrete logic (e.g., ASIC), an analog circuit, a digital circuit, a programmed logic device, a memory device containing instructions, a process running on a processor, a processor, an object, an executable, a thread of execution, a program, a computer and so on. A component may include one or more gates, combinates of gates, or other circuit components.

('671 Patent col. 3:51–66.) Incorporating this generic definition of *component*, the '671 Patent defines terms like *comparison component* and *difference component* by way of their intended functions. For instance, "[t]he difference component makes an identification of a difference between an actual action of a user and a standard action for the user." (*Id.* col. 4:10–13.)

---

[2] Plaintiff asserts that claim construction "is also required to properly evaluate Defendant's 'abstract concept' arguments." (Resp. at 9). But the history of the art and of the '671 Patent are irrelevant to step one of the § 101 inquiry. *See Trinity Info*, 74 F.4th at 1363 (noting that the analysis at step one was unaffected by a plaintiff's claims that their patents "included an advance over the prior art"); *see also Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) ("[A] claim for a *new* abstract idea is still an abstract idea.").

Considering Plaintiff's claim construction argument only at step two, Plaintiff bears the burden of explaining *why* and *how* these specific facts need be developed before the Court can fairly evaluate whether Plaintiff's claim includes "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *See Alice*, 573 U.S. at 221 (quoting *Mayo*, 566 U.S. at 72–73).

By broadly defining every claim component based solely on their function, the '671 Patent claims need no further construction for this Court to determine their conventionality. In its Motion to Dismiss, Defendant aptly summarizes the breadth of the '671 Patent, noting that it

> consists only of conventional, generic components. The patent provides no teaching as to how these components are to operate—that is, how they would gather information, compare a user's actions to an ideal action, or instruct the user. The result is a patent directed to a wide-ranging and seemingly limitless array of applications allegedly teaching people how to perform actions. The patent speaks of systems to instruct a person on how to swing a golf club like Tiger Woods, dunk a basketball like Michael Jordan, buy a new guitar, follow a recipe, fly-fish, paint, solve math problems, and even have "more meaningful" online chats with "single females."

(Mot. at 1.) Indeed, the '671 Patent itself seems to acknowledge the risk of preemption, noting the impossibility of describing "every conceivable combination of components." ('671 Patent col. 26:51–54.)

Given the foregoing analysis, claim construction is not required to rule on Defendant's Motion.

**IV.   CONCLUSION**

For the reasons set forth *supra*, the Court finds that the '671 Patent is invalid because it is not directed to patent-eligible subject matter and the asserted claims do not transform the abstract idea into a patent-eligible application.

**IT IS THEREFORE ORDERED** granting Defendant's Motion to Dismiss (Doc. 29) and dismissing Plaintiff's claims with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 6th day of November, 2024.

Honorable John J. Tuchi
United States District Judge